UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAFAELI, LLC, and GREAT LAKES
AFFORDABLE HOUSING, LLC

        Plaintiffs,

v.                                                            Case No. 14-13958

WAYNE COUNTY, WAYNE COUNTY                  HON. TERRENCE G. BERG
TREASURER RAYMOND WOJTOWICZ,
OAKLAND COUNTY, and OAKLAND
COUNTY TREASURER ANDREW
MEISNER,

        Defendants.

_____/

**OPINION AND ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS (DKT. 10)**

This case is a putative class action, brought by Plaintiff Rafaeli, LLC and

Great Lakes Affordable Housing, LLC ("Plaintiffs") against Defendants Wayne and

Oakland Counties and the Treasurers of those Counties ("Defendants").  Plaintiffs

allege, generally, that the notices required by the Michigan General Property Tax

Act ("GPTA") – Mich. Comp. Laws § 211.1 – regarding delinquent real estate taxes,

judicial tax foreclosure proceedings and the subsequent judicial foreclosure

proceedings do not comport with the constitutional requirements of Due Process and

Equal Protection.  Additionally, Plaintiffs allege that real property foreclosed upon

for failure to pay property taxes is being taken without just compensation.  More

specifically, this claim challenges the foreclosure and taking of the entire equity in

properties in order to satisfy minor tax deficiencies.  The Counties, Plaintiffs assert,
provide no compensation for the loss of that equity, even though its value far
exceeds the delinquent taxes, penalties, costs, and interest Plaintiffs may have
owed.  Plaintiffs claim that such a practice is forbidden by the Takings Clause of the
Fifth Amendment to the United States Constitution.  Accordingly, Plaintiffs seek an
award of "just compensation," as well as a declaration from this Court that
Michigan's GPTA is unconstitutional.

Plaintiffs seek to bring this suit "on behalf of a class of all persons who owned
real property taken by the Counties of Oakland and Wayne, Michigan…for
delinquent property taxes" (Dkt. 1, Compl. ¶ 1).[1]  Defendants filed a motion to
dismiss (Dkt. 10), arguing that the Court lacks subject matter jurisdiction over this
matter by operation of the Tax Injunction Act – 28 U.S.C. § 1341 – and that
principles of comity require that this case to be dismissed.

## FACTUAL BACKGROUND

According to the Complaint, Plaintiff Rafaeli, LLC ("Rafaeli") is a real estate
investment company that has purchased various rental properties in Oakland
County since 2001 (Dkt. 1 ¶ 18).  Rafaeli alleges that it purchased a rental property
in Oakland County – 20159 Mada, Pontiac, Michigan – on or about August 15, 2011

---

[1] More particularly, "All persons who currently own or at one time owned any parcel of real property
located within the counties of Oakland or Wayne and who had such real property taken from them
by the County for delinquent taxes without receiving minimum due process, at any time since 2002
and through the date of final judgment, or such longer amount of time as may be allowed by law; and
All persons who, after having had their property taken, are denied any compensation when their
property and equity in it are taken and then sold at auction and where the proceeds of the sale
exceed the amount of the delinquent taxes plus applicable fees, penalties, interest, and costs" (Dkt. 1
¶130).

(Dkt. 1 ¶ 19).  Rafaeli claims that its own address at the time of this purchase was 19900 Ten Mile Road, St. Clair Shores, Michigan (Dkt. 1 ¶ 19).

Rafaeli states that Defendant Oakland County Treasurer Meisner certified on the deed transferring the Mada property to Rafaeli that "all TAXES" were "paid for five years previous to the date of this instrument as appears by the records in the office except as stated" (Dkt. 1 ¶ 20).  Rafaeli claims that, despite this certification, on June 11, 2012 the Treasurer attempted to provide Rafaeli a notice of an alleged tax delinquency regarding 2011 property taxes.  Rafaeli alleges that this notice was mailed to 20159 Mada – not Rafaeli's St. Claire Shores address – and claimed a delinquency of $496.52 plus interest fees and penalties of $39.72 for a total of $536.24 if paid in June, $541.21 if paid in July, or $546.17 if in August (Dkt. 1 ¶ 20).  As will become a recurring theme, below, Rafaeli claims that it never received a copy of this notice.

Rafaeli next alleges that, on August 30, 2012, $1,691 was paid in property taxes on the Mada property. Rafaeli states that, despite this payment, on September 3, 2012, the Treasurer attempted to provide Rafaeli a second notice of delinquency – again mailing it to 20159 Mada – claiming a $496.52 delinquency and providing various increasing amounts if paid in September, October, or November. On January 14, 2013, Rafaeli claims that $576.07 was paid to the Treasurer (Dkt. 1 ¶ 21).

Rafaeli states that, despite the $576.07 payment, the Treasurer attempted to provide Rafaeli a third notice of delinquency on February 1, 2013 – again mailing it

3

to 20159 Mada.  This time, however, the Treasurer claimed $8.41 in tax and $2.26 in interest fees and penalties, for a total of $10.67 if paid in February, $206.36 if paid in March, and $206.43 if paid in April (Dkt. 1 ¶ 22).  This $8.41 was, apparently, never paid to Oakland County.

Thus, on May 16, 2013, Defendant Oakland County Treasurer filed a petition of foreclosure in the Oakland County Circuit Court seeking to forfeit thousands of properties for tax delinquencies from the year 2011, including Rafaeli's property.  As to Rafaeli's 20159 Mada property, the Treasurer sought to take this house for the $8.41 in tax, together with $198.14 in interest and fees for a total of $206.55 (Dkt. 1 ¶ 21).  Rafaeli claims that it never received notice of the institution of foreclosure proceedings.  *Id.*

Rafaeli states that, on October 29, 2013, the Treasurer attempted to provide Rafaeli with a combined "NOTICE OF SHOW CAUSE HEARING, JUDICIAL FORECLOSURE HEARING" (Dkt. 1 ¶ 24).  Rafaeli claims that, for the first time, the Treasurer attempted to personally serve this notice at 19900 Ten Mile Road, Rafaeli's address at the time the transfer deed was recorded a few years prior.  Rafaeli alleges that this attempt at service was unsuccessful, and that Defendant Treasurer "knew it."  *Id.*  Rafaeli states that, on November 4, 2013, the Oakland County Treasurer then attempted to personally serve the notice at 20159 Mada, and this time served it on one of Rafaeli's tenants (Dkt. 1 ¶ 24).  The tenant, apparently, never passed this notice along to its landlord, Rafaeli.

4

Rafaeli alleges that, on December 30, 2013, the Treasurer attempted to send "Final Notice" to Rafaeli and for the first time "attempted service certified mail" (Rafaeli does not allege where, specifically, this notice was mailed) (Dkt. 1 ¶ 25). Contemporaneously, the Treasurer again attempted to send the "Final Notice" to 19900 Ten Mile Road, "despite already knowing it would be returned." *Id.* Also for the first time, the Treasurer attempted to serve the Notice by sending it to the address of Rafaeli's resident agent for service of process. *Id.* Rafaeli claims that "[b]y January 13, 2014, the Treasurer knew those attempts had also been unsuccessful." *Id.*

In sum, Rafaeli alleges that it did not receive proper notice from the Oakland County Treasurer that the Mada property had an outstanding tax delinquency, was subject to foreclosure, or was being foreclosed upon. On February 26, 2014, the Oakland County Circuit Court held a foreclosure hearing (Dkt. 1 ¶ 26). Rafaeli did not appear, allegedly because it never received any notice of this proceeding. *Id.* Thus, Oakland County took complete title to Rafaeli's property for $8.41 in outstanding taxes, with $277.40 in interest and fees, for a total of $285.81. *Id.* This point bears repeating – Rafaeli's entire equity interest in the 20159 Mada property (Rafaeli owned the property outright, free of any mortgage encumbrance) was forfeited to Oakland County for $8.41 in unpaid taxes. The property's value, based on the foreclosure sale, was over $24,000.

On August 19, 2014, the Oakland County Treasurer held an auction, entered into the terms of a purchase agreement, and accepted $24,500 from a third party

who was the highest bidder for the 20159 Mada property (Dkt. 1 ¶ 27).  Rafaeli alleges that this purchaser then evicted Rafaeli's tenants and currently has the property formally listed for sale for $70,000.[2]  *Id.*

Regarding what allegedly happened to Plaintiff Great Lakes Affordable Housing, the Complaint is less clear.  The Complaint does not specify any real property it allegedly owned, or any tax delinquency notice it did or did not receive.  The Complaint merely alleges:

> Plaintiff GREAT LAKES AFFORDABLE HOUSING, LLC is also a limited liability company formed under the laws of the State of Michigan and which prior to March 31, 2014 owned real property located within the County of Wayne but which after that date had the property taken and sold by the Wayne County Treasurer due to alleged delinquent property taxes for the year 2011 (Dkt. 1 ¶ 33).

As noted earlier, the Complaint is brought as a putative class action, brought on behalf of all those that have had property foreclosed upon for failure to pay property taxes in Oakland and Wayne Counties since 2002 (Dkt. 1 ¶ 1).  The Complaint asserts claims for violation of due process under "U.S. Constitution Article 5" (the Court construes this as a reference to the Fifth Amendment to the U.S. Constitution), violation of the right to "just compensation," violation of the right to

---

[2]  It cannot be denied that the concept of the state confiscating all of the equity of a citizen's property, worth between $24,500 and $70,000, and selling it and keeping the entire proceeds – all to collect $8.41 in property taxes and $277.40 in interest and fees, is a manifest injustice that should find redress under the law. Property taxes must be paid, but for the County Treasurer to reap such an overwhelming windfall by depriving a property owner of his entire interest in the property, and gain tens of thousands of dollars more than the tax bill ever was, looks more like an abuse of power than like a local government's reasonable measures to ensure the collection of property taxes.  However, for the reasons set forth in this Order, this Court has no jurisdiction over this dispute.  There are avenues for Rafaeli to pursue in order to achieve a measure of justice, but they do not lie in federal court.

6

equal protection[3] under the Fourteenth Amendment to the U.S. Constitution, and "Municipal Liability."  Plaintiffs request injunctive and declaratory relief as well as money damages.  Essentially, Plaintiffs seek to enjoin Oakland and Wayne Counties from proceeding with any future tax delinquency foreclosures, forfeitures and sales.

On September 24, 2014, approximately three weeks prior to filing this lawsuit, Rafaeli filed a motion to set aside the foreclosure of the 20159 Mada property in Michigan's Oakland County Circuit Court – *In the matter of the Petition of the Treasurer of the County of Oakland, Michigan for the foreclosure of certain lands for unpaid property taxes*, Oakland Co. Cir. Ct. Case No. 13-134052-CZ (Langford Morris, J.).  This case remains pending.  Judge Denise Langford Morris entered an injunction on September 24, 2014 which "preserve[d] the status quo until Wednesday October 1, 2014 at 10:00 a.m. at which time the Court will rule upon Rafaeli, LLC's motion to set aside foreclosure judgment and auction sale" (Dkt. 10, Ex. B).  On October 17, 2014, Judge Langford Morris entered an order stating that the "prior injunction shall remain in effect until at least December 3, 2014 at 11:00 a.m. when the parties are to return for a hearing to update the Court on the progress in the class action lawsuit [presumably the case before this Court] referred to at the hearing on 10/15/14."  *Id.*  That order appears to have been

---

[3] Plaintiffs' equal protection claim is premised on allegations that taxpayers subjected to tax foreclosure are treated differently than defaulting mortgagors.  More specifically, Plaintiffs claim that Michigan's mortgage foreclosure statute provides a defaulting mortgagor the right to any equity in their property which remains after sale at public auction (Mich. Comp. Laws § 600.3252), whereas the GPTA does not provide an avenue for the delinquent taxpayer to recover the excess equity in a property following a tax foreclosure.

extended on December 11, 2014, February 13, 2015 and March 16, 2015, and the injunction appears to remain in effect to this day.

## **DISCUSSION**

### *A. Motion to Dismiss Standard*

Generally, Federal Rule of Civil Procedure 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction fall into two categories: facial attacks and factual attacks. *See* Fed. R. Civ. P. 12(b)(1); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) cert. denied. 513 U.S. 868 (1994). A facial attack challenges the sufficiency of the pleading itself. Upon receiving such a motion, the Court must take all of the material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235–37 (1974)). In contrast, a factual attack challenges the factual existence of subject-matter jurisdiction. *See Ohio Hosp. Ass'n v. Shalala*, 978 F.Supp. 735, 739 (N.D. Ohio. 1997). Defendants' motion presents a facial attack.

When a Court is inquiring about whether it has subject-matter jurisdiction, "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) cert. denied. 513 U.S. 868 (1994) (internal citations omitted). *See also RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996). "In reviewing such a motion, a district court is to probe the facts and assess the validity of its own jurisdiction. In doing so, the Court has a wide discretion to consider affidavits and

the documents outside the complaint, and may even conduct a limited evidentiary hearing if necessary." *Ohio Hosp. Ass'n v. Shalala*, 978 F.Supp. 735, 739 (N.D. Ohio 1997) (relying on *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

The plaintiff bears the burden of demonstrating that the Court has and may appropriately exercise jurisdiction over the subject matter. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). The Court may examine evidence of its power to hear a case, and must make any factual findings to determine whether it has jurisdiction. *See Kroll v. United States*, 58 F.3d 1087, 1090 (6th Cir. 1995*); Rogers v. Stratton Inds., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986); *Ohio Hosp. Ass'n v. Shalala*, 978 F.Supp. 735, 739 (N.D.Ohio 1997). A Rule 12(b)(1) motion is not converted into a Rule 56 motion for summary judgment when a Court examines evidence for this purpose. *See Rogers v. Stratton Inds., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

### B. Subject Matter Jurisdiction – Tax Injunction Act and Comity

The Tax Injunction Act declares that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. In a recent case involving a constitutional challenge to Oakland County's property tax foreclosure process, the Sixth Circuit succinctly summarized the Tax Injunction Act as follows:

Under the [Tax Injunction Act], "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law

9

where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The [Tax Injunction Act] creates a jurisdictional barrier to the federal courts for claims of declaratory or injunctive relief brought by a party aggrieved by a state's administration of its taxing authority. *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 (1981) (stating that the [Tax Injunction Act] "was first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes"); *California v. Grace Brethren Church*, 457 U.S. 393, 396, 408 (1982) (holding that the [Tax Injunction Act] "deprived the District Court of jurisdiction to hear" a First Amendment challenge to state and federal taxation regimes, and extending [Tax Injunction Act's] prohibition on injunctive relief to declaratory judgments); *Colonial Pipeline Co. v. Morgan*, 474 F.3d 211, 218 (6th Cir. 2007) (quoting *Grace Brethren* and stating that "a district court does not have jurisdiction over state and local tax matters where a 'plain, speedy and efficient remedy' is available in state court").

*Pegross v. Oakland Cnty. Treasurer*, 592 Fed. App'x 380, 384 (6th Cir. 2014).  When the Tax Injunction Act applies, it operates as a bar to federal jurisdiction.  *See Hedgepeth v. Tennessee*, 215 F.3d 608, 612 (6th Cir. 2000).  "The TIA has ... been broadly interpreted to bar suits for declaratory relief, injunctive relief, as well as monetary relief when there is an adequate remedy in state court." *Id*. at 612 n. 4 (citing *California v. Grace Brethren Church*, 457 U.S. 393, 408–10 (1982) *and Nat'l Private Truck Council, Inc. v. Oklahoma Tax Comm'n*, 515 U.S. 582, 586–88 (1995)).

The Tax injunction Act is "first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes."  *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 (1981).  However, this is not to say that the Act bars every lawsuit that relates to state tax collection.  The Supreme Court has held that the Act reflects "two closely related, state-revenue-protective objectives:

10

(1) to eliminate disparities between taxpayers who could seek injunctive relief in federal court—usually out-of-state corporations asserting diversity jurisdiction—and taxpayers with recourse only to state courts, which generally required taxpayers to pay first and litigate later; and

(2) to stop taxpayers, with the aid of a federal injunction, from withholding large sums, thereby disrupting state government finances.

*Hibbs v. Winn*, 542 U.S. 88, 104 (2004).

An important limitation is that the Tax Injunction Act and the principle of comity only bar Plaintiffs' claims if there exists a state remedy that is "plain, adequate, and complete," or, as the cases developing the common-law principle of comity have required, "plain, speedy, and efficient." *See Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 116 n. 8 (1981). The Supreme Court and the Sixth Circuit have found no functional difference between those two phrases. *Id.* at 116 n. 8; *In re Gillis*, 836 F.2d 1001, 1010 n. 7 (6th Cir. 1988). "[S]tate remedies are plain, adequate, and complete if they provide the taxpayer with a full hearing and judicial determination at which the taxpayer may raise any federal constitutional objections to [the] tax." *In re Gillis*, 836 F.2d at 1010. Moreover, "[a] number of courts have squarely faced the issue of whether a 'plain, speedy and efficient remedy' which has been allowed to lapse satisfies the Tax Injunction Act. These courts have unanimously concluded that failure to utilize a remedy does not render that remedy insufficient under § 1341." *Wenz v. Rossford Ohio Transp. Improvement Dist*, 392 F. Supp. 2d 931, 936-37 (N.D. Ohio 2005); quoting *Aluminum Co. of Am. v. Dep't of Treasury*, 522 F.2d 1120, 1125 (6th Cir. 1975).

11

The Tax Injunction Act is not the only potential bar to Plaintiffs' case.  In

*Fair Assessment in Real Estate Ass'n v. McNary*, the Supreme Court held that:

> [O]ur comity cases have thus far barred federal courts from granting injunctive and declaratory relief in state tax cases.... [W]e decide today that the principle of comity bars federal courts from granting damages relief in such cases....

> [W]e hold that taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts.

454 U.S. 100, 107, 116 (1981).  The federal common-law principle of comity

embodied in *Fair Assessment* "reflects some of the same concerns that led Congress

to enact the Tax Injunction Act," but "stands on its own bottom, and extends to

cases seeking monetary damages as well as injunctive or other equitable relief."

*Chippewa Trading Co. v. Cox*, 365 F.3d 538, 541 (6th Cir. 2004).

Thus, the question before this Court is whether the Tax Injunction Act and

the principles of comity bar Plaintiffs' lawsuit.  On the facts before the Court, I find

that they do.

### i.    *Due Process Claim*

Turning first to Plaintiffs' Due Process claim, Plaintiff Rafaeli alleges that

Oakland County did not give proper notice of the foreclosure proceedings.  Taking

Plaintiff Rafaeli's allegations as true, these allegations appear to give rise to a

cognizable Due Process violation.  However, it is clear that this challenge directly

targets the way Oakland County has "collected" the delinquent property taxes, and

thus falls squarely within the jurisdictional limitation imposed by the Tax

Injunction Act.  Furthermore, the posture of the case demonstrates that state court

12

remedies are available to Plaintiff Rafaeli, including not only seeking injunctive

relief, which Rafaeli has already obtained in state court, but also pursuing claims

for relief for these alleged violations of Due Process.  First, Plaintiff acknowledged

at oral argument that it could file a claim for monetary damages in Michigan's

Court of Claims, based upon the premise that it did not receive notice of the

proceedings.  Indeed, the GPTA provides:

> (1) If a judgment for foreclosure is entered…and all existing recorded and
> unrecorded interests in a parcel of property are extinguished…, the owner of
> any extinguished recorded or unrecorded interest in that property who claims
> that he or she did not receive any notice required under this act shall not
> bring an action for possession of the property against any subsequent owner,
> but may only bring an action to recover monetary damages as provided in
> this section.

> (2) The court of claims has original and exclusive jurisdiction in any action to
> recover monetary damages under this section.

> (3) An action to recover monetary damages under this section shall not be
> brought more than 2 years after a judgment for foreclosure….

Mich. Comp. Laws § 211.78l.

In addition to seeking a remedy in the state court of claims, Rafaeli could

pursue its Due Process claim in the Oakland County Circuit Court – where it

already filed suit, prior to filing the lawsuit before this Court – and attempt to

overturn the tax sale and restore Rafaeli's title to the property in question.  *See In

re Treasurer of Wayne Cnty. for Foreclosure,* 478 Mich. 1, 11 (2007) (holding that the

provision of the GPTA depriving state circuit courts of jurisdiction to alter judgment

of foreclosure for delinquent taxes, if the property owner did not redeem the

property or appeal the judgment of foreclosure within 21 days, violated due process

13

as applied to property owners who did not receive constitutionally adequate notice of the foreclosure proceedings).

As noted above, the Tax Injunction Act creates a jurisdictional barrier to the federal courts for claims of declaratory or injunctive relief brought by a party aggrieved by a state's administration of its taxing authority.  *See Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 (1981); *California v. Grace Brethren Church*, 457 U.S. 393, 396, 408 (1982); *Colonial Pipeline Co. v. Morgan*, 474 F.3d 211, 218 (6th Cir. 2007); *Pegross v. Oakland Cnty. Treasurer*, 592 Fed. App'x 380, 384 (6th Cir. 2014).  In view of the plain language of the statute, and considering how it and the doctrine of comity have been interpreted by the Supreme Court and the Sixth Circuit, it is clear that this Court may not exercise jurisdiction over Plaintiffs' Due Process claim, by operation of the Tax Injunction Act and the related principles of comity.

In reaching this decision, the Court recognizes that some federal appellate courts would disagree with the outcome.  The Second Circuit has concluded that the Tax Injunction Act does not bar a suit "challeng[ing] the adequacy of the notice provided" in a tax sale.  *Luessenhop v. Clinton Cnty.*, 466 F.3d 259, 264 (2d Cir. 2006).  In so finding, *Luessenhop* rejected the proposition that the Tax Injunction Act completely bars any action merely "because [it] pertain[s] to state tax administration in the most general sense."  *Id.* at 265.  District Courts outside of the Second Circuit have declined to follow *Lussenhop*, most notably *District Lock & Hardware, Inc. v. D.C.*, 808 F. Supp. 2d 36 (D.D.C. 2011).  *District Lock* held that

14

*Lussenhop* bypassed the plain text of the Tax Injunction Act, and improperly focused instead on the Congressional purpose of the Act—to bar "cases in which state taxpayers seek federal-court orders enabling them to avoid paying state taxes." *Id*. at 266.

*District Lock* reasoned that, from this perceived Congressional purpose, *Luessenhop* determined that federal court challenges to the adequacy of notice in a tax sale were not barred when plaintiffs do not "dispute the assessments or amounts owed." *Id*. at 268. *District Lock* continued:

> The Second Circuit asserted that because plaintiffs did not dispute that the tax was due, such challenges did "not raise the specter of federal courts reducing the flow of money into state coffers." *Id*. Hence, the court found that the challenges were not barred by the [Tax Injunction Act]. *Id*. The decision in *Luessenhop* neglects the text of the [Tax Injunction Act]; moreover, a challenge to the process of tax collection will always "raise the specter of federal courts reducing the flow of money into state coffers." *Id*. The [Tax Injunction Act] plainly bars challenges to state tax "collection," and *Luessenhop* never addresses why a challenge to the adequacy of notice in a tax sale is not a challenge to "collection." Rather, the Second Circuit merely relies on the Congressional purpose of the [Tax Injunction Act]. Moreover, even granting *Luessenhop* its premise that jurisdiction hinges on whether an action seeks to empty state coffers, a damages action plainly seeks money from state coffers. Although *Luessenhop* makes much of the fact that plaintiffs there did not "dispute the assessments or amounts owed," those plaintiffs still sought damages that effectively would offset the taxes recovered…. Accordingly, this Court finds no reason to depart from its earlier determination…that the [Tax Injunction Act], and by extension the related principle of comity, bar tax sale challenges such as plaintiffs bring here.

This Court agrees with the analysis set forth in *District Lock*. The broader view of the Tax Injunction Act expressed in *District Lock* appears more consistent not only with the statutory language but also with the Sixth Circuit's interpretation of the Act in the *Pegross* decision.

15

In sum, accepting the allegations in Plaintiffs' Complaint as true, this case may be litigated in state court, and adequate remedies found there. Plaintiffs' Due Process claim is quite clearly a direct challenge to the way that Oakland and Wayne County "collect" delinquent property taxes. As such, Plaintiffs' Due Process claim is barred by the express terms of the Tax Injunction Act, as well as under the principle of comity. A comprehensive administrative scheme is available for Plaintiffs to challenge the alleged Due Process violations in question in Michigan's court of claims, or in Michigan's circuit courts. If Plaintiffs want to raise constitutional claims, Michigan's state courts are equally equipped to hear § 1983 claims. Because a plain, adequate, and complete remedy is available in the state courts, and Plaintiffs may ultimately seek review of the state court decisions in the United States Supreme Court, this action is not appropriately before this Court, and must be dismissed without prejudice for want of subject matter jurisdiction.

## ii.    *Takings and Equal Protection Claims*

Plaintiffs also claim that the excess equity in their property was taken without just compensation, in violation of the Takings Clause of the Fifth Amendment to the United States Constitution. Relatedly, Plaintiffs assert that the Counties are violating their right to Equal Protection, by treating delinquent taxpayers subjected to tax foreclosure differently than defaulting mortgagors. Specifically, Plaintiffs complain that Michigan's mortgage foreclosure statute provides a defaulting mortgagor the right to any equity in their property which remains after sale at public auction (Mich. Comp. Laws § 600.3252), whereas the

16

GPTA does not provide an avenue for the delinquent taxpayer to recover the excess equity in a property following a tax foreclosure.

A similar taking without just compensation claim was recently allowed to proceed in Federal District Court – Tax Injunction Act and comity notwithstanding – in *Coleman through Bunn v. D.C.*, No. 13-1456, 2014 WL 4819092, – F.Supp.3d – (D.D.C. Sept. 30, 2014). *Coleman* reasoned that it had jurisdiction over the plaintiff's takings claim, as the plaintiff did not seek a court order nullifying his property tax obligation. Rather, the plaintiff conceded that his unpaid taxes, and any interest and fees, were due; he sought only the surplus equity that remained after those amounts are paid. Accordingly, *Coleman* found that, if the plaintiff won his lawsuit, no "tax" would be removed from the District's coffers, and for that reason, the Tax Injunction Act did not bar the plaintiff's claims.

The factual context of *Coleman*, however, is distinguishable from that which is before the Court. Unlike Michigan, the District of Columbia did not provide the plaintiff an avenue to bring an inverse condemnation claim to recover any surplus equity. *Coleman* recognized that for a Takings Clause claim to be ripe for judicial resolution, the plaintiff must show that: (1) "the government entity charged with implementing the regulations has reached a final decision"; and (2) the plaintiff has sought "compensation through the procedures the State has provided," which must be "reasonable, certain and adequate ... at the time of the taking." *Coleman* at * 8, citing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186, 194 (1985); *see also* 13B Charles Alan Wright & Arthur R. Miller, Federal

17

Practice and Procedure § 3532.1.1 (3d ed. 2014) ("There must be a final decision to 'take,' and the plaintiff must show that there is no other remedy to provide adequate compensation").

The requirement that a plaintiff exhaust state compensation remedies exists because "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation."  *Williamson*, 473 U.S. at 194. Accordingly, "the State's action is not complete in the sense of causing a constitutional injury unless or until the State fails to provide an adequate post-deprivation remedy for the property loss."  *Id*. at 195.  The Supreme Court therefore found a takings claim unripe where state statutory law permitted "a property owner [to] bring an inverse condemnation action to obtain just compensation for an alleged taking of property."  *Id*. at 196.

In *Coleman*, the Court recognized that the District of Columbia does not have a state constitution—a common source for a state inverse condemnation remedy. Further, the D.C. statute at issue in *Coleman* expressly provided for the taking of the plaintiff's surplus equity and contained no procedure for the recovery of that surplus.  Thus, *Coleman* held that, "because there is no 'reasonable, certain, and adequate' state remedy, *Williamson*, 473 U.S. at 194, [the plaintiff's] claim [was] ripe for resolution."  *Coleman* at *9.

Unlike in *Coleman*, Michigan's State Constitution provides that: "Private property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law. Compensation shall be

18

determined in proceedings in a court of record."  Mich. Const. 1963, Art. 10, § 2.

Michigan courts clearly recognize the right to bring an inverse condemnation claim.

*See, e.g., Merkur Steel Supply v. Detroit*, 261 Mich. App. 116 (2004).  Consequently,

before a taking claim may be considered ripe for adjudication in this Court,

Plaintiffs must first bring an inverse condemnation claim in state court, seeking to

recover their forfeited surplus equity.

    As to Plaintiff's Equal Protection claim, the Seventh Circuit has held that

such claims are also barred under the Tax Injunction Act.  "[A] lien sale is a mode of

tax collection; and so an action to enjoin it, or declare it illegal, or rescind it, or

perhaps even just obtain damages on the ground of its illegality, would be barred"

by the Tax Injunction Act.  *Wright v. Pappas*, 256 F.3d 635, 637 (7th Cir. 2001).  In

*Wright*, a purchaser of tax liens brought suit alleging that the county from which he

purchased the liens had misrepresented the values of the relevant properties for

racially discriminatory reasons.  *Id*. at 636.  The plaintiff sought a "refund [of] the

price he paid for the certificates." *Id*.  The Seventh Circuit held that "[a] lien sale is

a mode of tax collection; and so an action to enjoin it, or declare it illegal, or rescind

it, or perhaps even just obtain damages on the ground of its illegality, would be

barred." *Id*. at 637.  The plaintiff was barred by the Tax Injunction Act because he

"challenge[d] the mode of collection," and he sought a refund of the purchase price

he paid, which was the functional equivalent of the tax payment. *See id*.  In some

respects, the sale of a tax lien is several steps further removed from direct tax

collection than a tax delinquency foreclosure sale is, but the Seventh Circuit

19

nevertheless found it to be the equivalent of the mode of tax collection. *Wright* was cited approvingly by the Sixth Circuit in *Pegross*.

In sum, tax delinquency foreclosure sales are inexorably intertwined with the collection of past due taxes: they are the "mode of collection." The Tax Injunction Act deprives this Court of jurisdiction over suits challenging the collection of state taxes where an adequate remedy lies in state court. Because Plaintiffs have adequate remedies in state court, Plaintiffs' claims are barred by the Tax Injunction Act and by comity. Therefore, the Complaint is dismissed without prejudice.

## CONCLUSION

The Tax Injunction Act, 28 U.S.C. § 1341, and principles of comity bar Plaintiffs' claims from consideration in this Court. Therefore, Defendants' motion to dismiss (Dkt. 10) is **GRANTED**, and this case is dismissed for lack of subject matter jurisdiction. This dismissal is without prejudice; Plaintiffs may continue to, and are encouraged to, pursue the constitutional claims asserted in this case in an appropriate state forum. Since this case is being dismissed, Plaintiffs' motion for class certification (Dkt. 2) is **DENIED AS MOOT**.

**SO ORDERED.**

Dated: June 4, 2015                          s/Terrence G. Berg                          
                                             TERRENCE G. BERG
                                             UNITED STATES DISTRICT JUDGE

20

**<u>Certificate of Service</u>**

I hereby certify that this Order was electronically submitted on June 4, 2015, using the CM/ECF system, which will send notification to all parties.

s/A. Chubb_____
Case Manager